University of New York. Good morning, Your Honors. The defendants are not entitled to qualified immunity except for what I have conceded in my brief. Defendants Genachowski and Burganowski were not responsible for violation of the First Amendment. There are two reasons why. First, the law was clearly established about due process and First Amendment retaliation long before 2012, when the events described in my complaint occurred. For example, in 2001, this Court decided Garcia v. SUNY Health Sciences so defendants knew that private as well as public concern speech was protected. The major cases from the Supreme Court which require due process for academic and disciplinary punishments go back to the 1970s and 1980s. So defendants should have known they were violating my rights. Also, the defendants have the burden of proof to assert that they are shielded by qualified immunity. For example, a jury could reasonably find that forcing me out of my group therapy lab and the effect of chilling speech because it severed communication between me and my fellow students. I will address my First Amendment retaliation claim. In my brief, I focus on particular speech specifically, which was what I and the other students said at the March 7th group therapy session. The journal entry about that class and the multiple complaints I made in the next 24 hours. This is not new. In the district court, my summary judgment of position of brief focused on those same speech events so the defendants were wrong to claim that I failed to identify the speech that they punished me for. I explain all this on pages 41 to 45 of my brief. On page 45, I explain and document how the defendants delayed six months in producing the e-mails that I properly request. In fact, I received over 600 e-mails just 11 days before my deposition and I had not yet made sense of them. Those e-mails included details of the secret investigation into me. When I posed summary judgment, my declarations were crystal clear that in light of this discovery information, the speech all had to do with my March 7th group therapy session and the complaints I made to my professors. So I argue I was particular and not general. I disagree that the dismissal from the lab was not deprivation of property. How do you respond to this? Yes, Your Honor. If you could help me. During the deposition, you were asked to identify the reason that you were removed and you said, still to this moment, I don't know. It doesn't make sense after 650 something e-mails and documents. Still, I don't know. And now you're saying, as I understand it, and correct me if I'm misunderstanding, that there were certain criticisms following the lab section, the section that show an improper motive, but you don't reference any protected speech. So help me understand. Yes, Your Honor. At that time, I had received these 600 and over, there are about 663, I believe, e-mails. I had only 11 days to review them. I really read, scrimped through them, even though when they had six months, they lasted six months. If you see in the docket, I had to present a motion to compel to get these e-mails. Now, at that time, in the time of my deposition, I knew that the only reason for depriving me and retaliating against me was my speech, because the person that, the professor that was in charge and who took the decision didn't even know me, didn't even know my face. The first time he communicated with me was to let me know that I was out of the group. Now, Your adversary would argue that, as I understand it, that you were removed from the lab section because of the negative student evaluations. Yes, Your Honor, and that's exactly why this speech is specific at this point. I thought that there was a previous incident about me saying that I was judging people, and it came out of my native language, Spanish, so I was using the term improperly. Now, after reviewing the e-mails and seeing that the defendants only focused on my last session that they reviewed and they comment among them, where Dr. Sudano even stated that he would have to treat me clinically as borderline, with a borderline personality disorder diagnosis, which is completely unethical, he based only on that class on the e-mails where I, yes, was asked my opinion about the group and offered a criticism and say that the group was not being leaded in a correct way, and I asked for help from professors to solve the problem. And from my calls and e-mails asking for help to the professors, which I did not receive reply, they forwarded them all. And from what they were communicating among them, from these over 600 e-mails, only about 10 are mine. Thank you. Good afternoon, and may it please the Court, my name is Dustin Brockner on behalf of Appellees. Plaintiff complained that her lab discussion group was psychologically hazardous, unsafe, and triggering traumatic symptoms. The SUNY faculty promptly responded by meeting with plaintiff to address these issues and also discussed internally how to proceed. After careful deliberation, they decided to remove plaintiff from her lab group while promising to help her find a new one. The plaintiff's claim fails for three reasons. First, she has no property interest in her lab group, that she has no constitutionally protected interest in taking or remaining in a specific class, much less one section of a class. Second, Pelley's conduct was not made in bad faith, as required to show deprivation. The faculty made a reasoned professional judgment that plaintiff's presence in the lab group disrupted the learning process and caused plaintiff and other group members undue stress. And third, plaintiff received all the process due. There were multiple e-mails, meetings, and phone calls with plaintiff to address her continuing presence, as well as ample post-deprivation avenues, including Article 78 proceeding, as well as the university grievance procedure. How would you respond to the view that there should be some pre-deprivation process before administrators could make the kind of decision that they made in this case? Well, I think that there was ample pre-deprivation meeting. Here, she had e-mails with the faculty. She met with Dr. Lee on March 12th, where she talked about her side of the story. There was also an e-mail from Dr. Sedano saying, you know, we need to meet. This should not be as stressful. So I believe that there was a pre-deprivation notice. And to the extent, under the circumstances, when they tried to meet with her, and she said it was impossible, that they then were justified in scheduling the meeting when they did. And as to her First Amendment claim, I think the district court got correct that she had failed to identify specific protected speech. And at the very least, there's no evidence of improper retaliatory animus. The record established that the faculty here acted to protect the student's mental health and make sure the lab group was meeting its educational objectives. And also, there was no adverse action. The conduct here was protective, not punitive. At the very least, appellees are entitled to qualified immunity because the governing law at the time of the incident suggested that only conduct that effectively silenced speech would give rise to a claim. Now, unless the Court has further questions, we ask the district court be affirmed. Thank you. Your Honors, I have property rights over the claim because I have a contract with the university. I fulfilled my part. I attended classes and had good grades, and the university didn't fulfill their part. The decision was based on bad faith, because even though the post attorney is saying that there was ample communication, the communication that she mentioned with Dr. Lee, it was previous to that class, and it was regarding me having said that I was judging the students, and I even told her. My pastor's wife told me that judging is a bad thing. I thought judging was listening carefully to make an opinion, but I think this only applies when it's with you. Now, so there was no due process, because the defendants never mentioned that issue of judging. If you have read the brief, and it was not mentioned that I discussed judging, and that was what I was talking about with Dr. Lee. The defendants never gave me a reason or a chance to defend myself or to present my side of the story regarding the charges. I never knew the charges until they were shown in discovery. Thank you. Thank you.